UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HEARTLAND CONSUMER PRODUCTS LLC and TC HEARTLAND, LLC | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:17-cv-1035 |
| | ) | |
| DINEEQUITY, INC., APPLEBEE'S FRANCHISOR LLC, APPLEBEE'S RESTAURANTS LLC, APPLEBEE'S SERVICES, INC., INTERNATIONAL HOUSE OF PANCAKES, LLC f/k/a INTERNATIONAL HOUSE OF PANCAKES, INC., IHOP FRANCHISING LLC, IHOP FRANCHISE COMPANY, LLC, and IHOP FRANCHISOR, LLC | ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR PRELIMINARY INJUNCTION,**
**PERMANENT INJUNCTION, AND DAMAGES**

For its causes of action against Defendants DineEquity, Inc. ("DineEquity"), Applebee's

International, Inc. ("Applebee's"), Applebee's Franchising LLC ("Applebee's Franchising"),

International House of Pancakes, LLC ("IHOP LLC"), and IHOP Franchisor LLC ("IHOP

Franchisor") (collectively the "Defendants"), Plaintiffs, Heartland Consumer Products LLC and

TC Heartland, LLC (hereinafter collectively referred to as "HEARTLAND") state as follows:

**Nature of the Action**

1.     This is an action for injunction, damages, and other appropriate relief arising out of

Defendants' violations of trademark and trade dress infringement, dilution and unfair competition

under the Lanham Act, the Indiana State Trademark Act, and the common law of the State of Indiana.

2.     Each year, American consumers spend more than $700 million on sugar substitutes — products that take the place of sugar but are low in calories.

3.     Until 2000, the United States no-calorie sweetener market was dominated by products made with saccharin (such as Sweet'N Low®) or aspartame (such as Equal®). In 2000, SPLENDA® was introduced as the first sucralose-based sweetener. Since its introduction, SPLENDA® has been remarkably popular among consumers.

4.     SPLENDA® sweetener is a low-calorie sweetener using sucralose which is derived from sugar using a patented process to create a sweetener that tastes like sugar. Unlike all other tabletop sucralose sweeteners in the market, SPLENDA® Brand Sweetener is made in America.

5.     SPLENDA® branded sucralose is sold in both retail and food service markets, and used in a variety of products across private and commercial kitchens. SPLENDA® tabletop sweeteners ("SPLENDA® Brand Sweetener") are used to sweeten beverages and purchased by consumers for cooking and baking in their homes. SPLENDA® branded sucralose is also used as an ingredient in third-party commercial food production. Across marketplaces, SPLENDA® Brand Sweeteners have gained the trust of customers by providing a superior product and brand experience for nearly two decades.

6.     As a result, SPLENDA® is the market leader among low-calorie sweeteners in the United States. Defendants, through their own actions and through the actions of their affiliates, have unfairly, and in violation of the law, limited HEARTLAND's trademark rights in SPLENDA® in deceiving customers into believing the IHOP and Applebee's restaurants carry SPLENDA® Brand Sweetener, while providing consumers with sweeteners for which the active

ingredients are a product of China—rather than the American-made SPLENDA® Brand Sweetener product—thereby damaging the hard-earned reputation held by HEARTLAND and whittling away at the value of its trademark by using it to identify non-SPLENDA sucralose-based sweeteners.

7.     Specifically as an example, employees of IHOP and Applebee's restaurants have misrepresented to consumers that the product being provided to the consumer is SPLENDA® Brand Sweetener when this is not true. Even in the face of responses from consumers that the packet does not look like a SPLENDA® Brand packet, such consumers are insistently told that such product is SPLENDA® Brand Sweetener when it is not.

8.     HEARTLAND is a global leader in the production of low calorie sweetener products, including the iconic SPLENDA® Brand Sweetener, creamers, beverage concentrates, coffee and nutritional drinks. As the owner of various and famous trademarks, HEARTLAND seeks damages and injunctive relief to enjoin Defendants' wrongful use of the SPLENDA® trademark in commerce.

### Parties, Jurisdiction, and Venue

9.     Heartland Consumer Products LLC is a limited liability company, organized and existing under the laws of the State of Delaware, with a principal business address of 14300 Clay Terrace Boulevard, Suite 249, Carmel, Indiana 46032, in Hamilton County.

10.     TC Heartland, LLC is a limited liability company, organized and existing under the laws of the State of Indiana, with a principal business address of 14300 Clay Terrace Boulevard, Suite 249, Carmel, Indiana 46032, in Hamilton County.

11.     Upon information and belief, Defendant DineEquity, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal business address of 450 N. Brand Blvd, 7th Floor, Glendale, CA 91203. It is in the business of owning and operating

International House of Pancakes dba IHOP and Applebee's restaurants throughout the United States.

12.     Upon information and belief, Applebee's Franchisor LLC is a limited liability company organized and existing under the laws of Delaware with a principal business address of 450 N. Brand Blvd, 7th Floor, Glendale, CA 91203.  It is in the business of franchising independent business persons to operate Applebee's restaurants throughout the United States.   Upon information and belief, Applebee's Franchising maintains significant control over the acts of its franchisees, requiring strict compliance with corporate specifications and standards.

13.     Upon information and belief, Applebee's Restaurants LLC is a limited liability company organized and existing under the laws of Delaware, with a principal business address of 450 N. Brand Blvd, 7th Floor, Glendale, CA 91203. It is in the business of serving as franchisor for independent business persons operating Applebee's restaurants throughout the United States. Upon information and belief, Applebee's Restaurants maintains significant control over the acts of its franchisees, requiring strict compliance with corporate specifications and standards.

14.     Upon information and belief, Applebee's Services, Inc. is a corporation organized and existing under the laws of Kansas, with its principal business address of 450 N. Brand Blvd, 7th Floor, Glendale, CA 91203. It is in the business of training independent business persons operating Applebee's restaurants throughout the United States.

15.     Upon information and belief, International House of Pancakes, LLC f/k/a International House of Pancakes, Inc. is a limited liability company organized and existing under the laws of Delaware, with a principal business address of 450 N. Brand Blvd, 7th Floor, Glendale, CA 91203.  It is in the business of franchising independent persons to operate IHOP restaurants throughout the United States.  Upon information and belief, IHOP LLC maintains significant

control over the acts of its franchisees, requiring strict compliance with corporate specifications and standards. Upon information and belief, the sole member of International House of Pancakes, LLC is DineEquity, Inc., a Delaware corporation with its principal place of business in Glendale, California.

16.     Upon information and belief, IHOP Franchisor LLC is a limited liability company organized and existing under the laws of Delaware, with a principal business address of 450 N. Brand Blvd, 7th Floor, Glendale, CA 91203. It is in the business of franchising independent business persons to operate IHOP restaurants throughout the United States. Upon information and belief, IHOP Franchisor maintains significant control over the acts of its franchisees, requiring strict compliance with corporate specifications and standards.

17.     Upon information and belief, IHOP Franchising LLC is a limited liability company organized and existing under the laws of Delaware, with a principal place of business in Glendale, California. Upon information and belief, the sole member of IHOP Franchising, LLC is IHOP Holdings, LLC, a Delaware limited liability company with its principal place of business in Glendale, California. The sole member of IHOP Holdings, LLC is International House of Pancakes, LLC, a Delaware limited liability company with its principal place of business in Glendale, California. The sole member of International House of Pancakes, LLC is DineEquity, Inc., a Delaware corporation with its principal place of business in Glendale, California.

18.     Upon information and belief, IHOP Franchise Company, LLC is a Delaware limited liability company with its principal place of business in Glendale, California. Upon information and belief, the sole member of IHOP Franchise Company, LLC is IHOP Franchising, LLC, a Delaware limited liability company with its principal place of business in Glendale, California. The sole member of IHOP Franchising, LLC is IHOP Holdings, LLC, a Delaware limited liability

company with its principal place of business in Glendale, California. The sole member of IHOP Holdings, LLC is International House of Pancakes, LLC, a Delaware limited liability company with its principal place of business in Glendale, California. The sole member of International House of Pancakes, LLC is DineEquity, Inc., a Delaware corporation with its principal place of business in Glendale, California.

19.     This Court has personal and subject matter jurisdiction over the Defendants because the Defendants conduct business, and/or are incorporated, and/or are authorized to do business in the State of Indiana, and the actions giving rise to this Complaint caused harm to an Indiana-based business.

20.     Venue is proper in this Court because Defendants are irreparably damaging the value of HEARTLAND's iconic SPLENDA® trademark and other marks, and a substantial part of the events giving rise to the claims in this action occurred in Indiana.

### The SPLENDA® Brand

21.     Years ago, researchers from an established British college in conjunction with Tate & Lyle PLC, were researching a new compound made from sugar, called sucralose.  As the story goes, a young researcher misheard a request to "test" the compound as a request to "taste" it. What they discovered was that sucralose was incredibly sweet, and more importantly calorie free. By 1990, several food and health organizations approved the use of sucralose in food products, the sweetening ingredient in SPLENDA® Brand Sweetener. Capitalizing on this approval, SPLENDA® Brand Sweetener made its worldwide debut in Canada. Not only was SPLENDA® Brand Sweetener sweet, but it was also the first low calorie sweetener that consumers could use for cooking and baking.

22.     In the United States, the FDA approved sucralose for use in connection with food products and food preparation on April 1, 1998. Once again, SPLENDA® Brand Sweetener was at the forefront of the low-calorie sweetener market by marketing SPLENDA® Brand Sweetener to U.S. consumer via the Internet in 1999. In September 2000, SPLENDA® Brand Sweetener officially launched in retail stores across the United States.  In three short years after its launch in the United States, SPLENDA® Brand Sweeteners became the unrivaled leader in the low-calorie sweetener retail and food service markets. Additionally, sucralose has become one of the most extensively tested food ingredient in the world. It is approved for use in over 80 countries and used in more than 4000 products globally. SPLENDA® Brand Sweeteners are by far the most preferred low calorie sweetener products in the United States.

23.     Recognizing the value and strength of the SPLENDA® Brand, HEARTLAND resolved to acquire and invest in the brand. On September 25, 2015, HEARTLAND purchased the SPLENDA® brand from McNeil Nutritionals, LLC ("McNeil"), a subsidiary of Johnson & Johnson Consumer, Inc. (the "Transaction"). The Transaction solidified HEARTLAND's position as a global leader in the low calorie sweetener market.

24.     This Transaction was critical for HEARTLAND to continue offering its customers the very best tasting products to sweeten foods and beverages without adding calories.

25.     Within months of the Transaction, HEARTLAND launched its first new SPLENDA® brand product in more than 5 years, SPLENDA® ZERO a liquid version of the sweetener with no calories and no carbohydrates.

26.     HEARTLAND has further expanded the reach of the SPLENDA® brand by launching SPLENDA® NATURALS, an all-natural sweetener now available nationwide in most major retailers.

27.     Based on The Nielsen Company, Answers on Demand, as of August 27, 2016, the data captured in this information shows American consumers spent $592 million on low calorie sweeteners in the preceding twelve (12) months in the outlets captured by this data set. During this time, the SPLENDA® brand had the largest market share amounting to 31.8%.  In the United States, SPLENDA® Brand Sweeteners estimated net trade sales for 2016 are $163 million, and reach $263 million worldwide.

28.     HEARTLAND has expended and continues to expend substantial time, effort, and other resources in acquiring, developing, advertising and otherwise promoting, SPLENDA® Brand Sweeteners both nationally and globally. As a result, SPLENDA® is a famous brand, instantly and widely recognized by consumers, the public, and the trade.

### The HEARTLAND Intellectual Property

29.      HEARTLAND, and its predecessors in interest, have used a variety of legally-protected trademarks in connection with its SPLENDA® branded products. For example, HEARTLAND, through assignment, is the current owner of the following United States trademark registrations:  Reg. Nos. 1544079, 3346910; 4172135, 4165028, 4301712, 4172136, 4165029, 4122311, 4187229, 4202774, 4230392, 4238101, 4106164, 4664653, and 4744600.  Further, HEARTLAND is the owner of the following pending applications for United States trademark registrations:   Serial Nos. 86865337, 87012521, and 87010504. These registrations and applications, including any and all common law rights in the United States, shall be referred to herein as the SPLENDA IP.

30.     Heartland has also obtained trademark registrations worldwide for the SPLENDA IP in over 90 countries.

31.     SPLENDA® Brand Sweetener is also well-known and famous for being packaged in yellow-colored packets.

32.     The SPLENDA IP is famous as defined by 15 U.S.C. § 1125(c).

33.     The SPLENDA IP has been used continuously, with wide promotion, and has never been abandoned.

34.     The SPLENDA IP is non-functional.

**Defendants' Prior Relationship with the SPLENDA® Brand**

35.     Prior to the Transaction, Johnson & Johnson Consumer, Inc. outsourced its SPLENDA® Brand Sweetener distribution in the foodservice industry to Diamond Crystal Brands, Inc. (or its affiliate), which directly dealt with DineEquity and/or its related entities/purchasing agents for the purchase of SPLENDA® Brand Sweetener.

36.     Upon information and belief, DineEquity purchased SPLENDA® Brand Sweetener directly from Diamond Crystal until sometime between 2009 to 2013. At that point, DineEquity ceased purchasing SPLENDA® Brand Sweetener through Diamond Crystal.

37.     Since that time, DineEquity has provided IHOP and Applebee's customers with sweeteners for which the active ingredients are a lower-quality product of China while misrepresenting that its yellow packet sweeteners are American-made SPLENDA® Brand Sweetener.

**Defendants' Acts of Infringement, False Designation
of Origin, Unfair Competition and Dilution**

38.     Defendants are engaged in, and/or have engaged in, the active deception of customers through misappropriation of the SPLENDA IP, leading customers to believe Defendants carry SPLENDA® Brand Sweeteners when they do not. Defendants' specific conduct includes, but is not limited to:

a. Representing the use of SPLENDA® Brand Sweetener in IHOP and Applebee's restaurants through oral affirmation to customers that the sweetener provided in yellow packets is actually SPLENDA® Brand Sweetener or re-branded SPLENDA® Brand Sweetener, despite the fact that the provided sweetener is not SPLENDA® Brand Sweetener; and

b. By failing to provide sufficient cues to the consumer that the yellow-colored sweetener packets are not the leading brand sweetener formerly carried in the restaurants.

39.   Defendants have a wide network of franchisee stores, and with knowledge or reckless disregard of HEARTLAND's rights in the SPLENDA IP, has contributed to franchisee misidentification of non-SPLENDA® sweetener as actual SPLENDA® Brand Sweetener.

40.   With regard to those IHOP and Applebee's franchisees, upon information and belief, Defendants have failed to take reasonable precautions against the occurrence of the franchisee's infringing conduct where the infringing conduct could be reasonably anticipated.

41.   Defendant's activities, as described above, have created actual false impressions, consumer confusion, and consumer deception, among the public and the trade such that they harbor a mistaken belief that SPLENDA® Brand Sweetener is being offered at IHOP and Applebee's restaurants.

42.   HEARTLAND has expended substantial resources to market and promote SPLENDA® Brand Sweetener and the fact that SPLENDA® Brand Sweetener is manufactured in the United States.  This has been a key element of HEARTLAND's marketing campaign for the SPLENDA® Brand. Consumers have, therefore, come to expect that when they ask for

SPLENDA® Brand Sweetener they are receiving the highest quality low-calorie sweetener long represented by the SPLENDA® Brand.

43.     As one example of actual confusion, a customer recently expressed his confusion between the off-brand, non-genuine sucralose being provided by an IHOP restaurant and genuine SPLENDA® Sweetener via customer report to HEARTLAND, as follows:  "Are you aware there is an IHOP whom is offering SPLENDA inside of their own packaging?"

44.     HEARTLAND has received multiple reports of actual confused customers of Defendants. These complaints make clear that customers in IHOP and Applebee's stores have been deceived as to the true nature of the sucralose product provided to them. Customers have complained that they are not certain what sweetener IHOP and Applebee's is giving them.  This has led, in some cases, to customers who asked for the trusted SPLENDA® Brand Sweetener by name to conclude that SPLENDA® is not of the quality advertised or the quality they have come to expect. Simply put, Defendants' conduct is deceiving the marketplace as to the actual sweetener being offered in its stores, and the quality of the products available to its customers.

45.     Prior to filing this lawsuit, HEARTLAND undertook certain investigations of IHOP and Applebee's stores to survey and determine the extent of Defendants' misrepresentations across the United States. Investigators traveled to a number of IHOP and Applebee's stores, which were randomly selected and geographically located across the country, and documented employees' responses to requests for SPLENDA® Brand Sweetener and follow-up questions about "yellow packet sweeteners" which were not SPLENDA® Brand. Investigators revealed that a clear majority of stores—20 out of 28 investigated Applebee's stores and 26 out of 34 investigated IHOP stores—affirmatively represented, through their agents or employees, that non-SPLENDA® sucralose sweetener was instead SPLENDA® Brand Sweetener. Investigators, further, traveled to

11 IHOP stores in the Cincinnati-area, 10 of which are corporate-owned, and revealed that 7 of these stores affirmatively misrepresented their non-SPLENDA® sucralose sweetener as SPLENDA® Brand Sweetener.

46.    Applebee's and IHOP have even taken steps to attempt a "private-labeling" of genuine SPLENDA® Brand Sweetener by packaging its tabletop sucralose sweetener in yellow packets, intending to palm off the goodwill and association of the yellow packet with genuine SPLENDA® Brand Sweetener:

 

The use of this yellow packaging, standing alone and in combination with an absence of any oral or other cues to customers that the product is not genuine SPLENDA® Brand Sweetener, leads to the confusion of which Heartland now complains.

47.    Consumers have a right to receive SPLENDA® Brand Sweetener when they ask for it by name.  They also have a right to be told the truth about what is being added to their food and to not be deceived, whether intentionally or not, by companies secretly substituting sweeteners for genuine, American-made SPLENDA® Brand Sweetener. HEARTLAND brings this suit not only to vindicate its own rights, but to also protect consumers from this deceptive conduct.

48.    Upon information and belief, Defendants intend to continue the above-detailed course of conduct unless otherwise restrained.

49.    HEARTLAND is suffering irreparable injury and has suffered substantial damages as a result of Defendants' activities, and has no adequate remedy at law.

## COUNT I

### Common Law Trademark Infringement
### and Trademark Infringement under 15 U.S.C. §1114(1)

50.     HEARTLAND incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 48 above as if fully and separately set forth in this section of the Complaint.

51.     Defendants used the SPLENDA® trademark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

52.     Defendants further provided yellow packets of non-SPLENDA® sweetener without sufficient cues to identify the product as not being genuine SPLENDA® Brand Sweetener.

53.     Defendants' use of the SPLENDA® and other marks was without the consent or authorization of HEARTLAND.

54.     In this misconduct, Defendants have infringed the rights of HEARTLAND as the registrant of the subject marks.

55.     Upon information and belief, Defendants engaged in this infringement with knowledge, and willfully and intentionally.

56.     Where such unlawful activities were performed not by Defendants directly, but through the acts or omissions of its franchisees or affiliates, Defendants were contributory in any infringement of HEARTLAND' rights, or are otherwise vicariously liable to HEARTLAND.

57.     As a result of Defendants' conduct, HEARTLAND has been damaged and is entitled to recovery for the injuries sustained, including but not limited to, Defendants' profits from the sale of infringing goods, actual damages, statutory damages, treble damages, corrective advertising damages, costs of this litigation, and attorneys' fees associated with this litigation.

58.     HEARTLAND is also entitled to preliminary and permanent injunctive relief.

## COUNT II

### False Designation of Origin under 15 U.S.C. § 1125(a)

59.     HEARTLAND incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 57 above as if fully and separately set forth in this section of the Complaint.

60.     Defendants' identification of non-SPLENDA® Brand Sweetener as genuine SPLENDA® Brand product constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is: (a) likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities; or (b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of Defendants' goods, services or commercial activities.

61.     Further, Defendants' offer for sale of non-SPLENDA® Brand Sweetener in yellow packets commonly associated with genuine SPLENDA® Brand product, and otherwise without sufficient cues to the consumer of the true nature of the product, constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is: (a) likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities; or (b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of Defendants' goods, services or commercial activities.

62.     Defendants' use of the SPLENDA® and other marks was without the consent or authorization of HEARTLAND.

63.     In this misconduct, Defendants have violated the rights of HEARTLAND as the owner of the subject marks.

64.     Defendants' wrongful promotion of its goods as genuine SPLENDA® Sweetener was committed, upon information and belief, with knowledge that Defendants were misrepresenting the nature, characteristics, qualities and/or geographic origin of its goods, by way of providing consumers with literally false information about the use of SPLENDA® Brand products in the Defendants' goods and stores, or by way of providing information that was misleading in context, as demonstrated by actual confusion about the use of SPLENDA® Brand products in IHOP and Applebee's stores.

65.     Where such unlawful activities were performed not by Defendants directly, but through the acts or omissions of their franchisees or affiliates, Defendants were contributory in any infringement of HEARTLAND' rights, or is otherwise vicariously liable to HEARTLAND.

66.     As a result of Defendants' conduct, HEARTLAND has been damaged and is entitled to recovery for the injuries sustained, including but not limited to, Defendants' profits from the sale of infringing goods, actual damages, statutory damages, treble damages, corrective advertising damages, costs of this litigation, and attorneys' fees associated with this litigation.

67.     HEARTLAND is also entitled to preliminary and permanent injunctive relief.

## COUNT III

### Unfair Competition

68.     HEARTLAND incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 66 above as if fully and separately set forth in this section of the Complaint.

69.     Defendants have engaged in unfair competition against HEARTLAND.  These acts have included, but are not limited to, the following particulars:

    a.     Unauthorized use of the SPLENDA® Brand (and other marks) in connection with the offering of goods and services at Defendants' places of business;

    b.     Misrepresenting non-SPLENDA® Brand Sweetener as genuine SPLENDA® Brand Sweetener;

    c.     Offering for sale sucralose-based product in yellow packets commonly associated with genuine SPLENDA® Brand Sweetener without sufficient cues that the product is not genuine SPLENDA® Brand Sweetener.

    d.     Reaping the benefits of customer association of Defendants with the SPLENDA® Brand and other HEARTLAND marks without paying HEARTLAND for that benefit;

    e.     Misrepresenting Defendants' off-brand sucralose sweetening product as having the benefits of being "Made in America" when in fact it was not, because SPLENDA® Sweeteners are actually made in the United States; and

    f.     Contributing to the infringement of HEARTLAND' rights by Defendants' franchisees or affiliates.

70.     Upon information and belief, this unfair competition was engaged in by Defendants intentionally and willfully.

71.     As a result of Defendants' conduct, HEARTLAND has been damaged and is entitled to recovery for the injuries sustained, including but not limited to, Defendants' profits

from the sale of infringing goods, actual damages, punitive damages, corrective advertising damages, costs of this litigation, and attorneys' fees associated with this litigation.

72.     HEARTLAND is also entitled to preliminary and permanent injunctive relief.

<u>**COUNT IV**</u>

**Trademark Dilution under 15 U.S.C. § 1125(c)**

73.     HEARTLAND incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 71 above as if fully and separately set forth in this section of the Complaint.

74.     The SPLENDA IP  whether registered or protected under common law, is famous and inherently distinctive and/or have otherwise acquired substantial secondary meaning and widespread public recognition in accordance with 15 U.S.C. § 1125(c).

75.     Defendants' use of the SPLENDA IP, without authorization from HEARTLAND and without providing genuine SPLENDA® Brand product to their customers, is diluting and dilutive of the distinctive quality of the famous and iconic SPLENDA® Brand, thereby decreasing the capacity of the SPLENDA® brand to identify and distinguish HEARTLAND's products from off-brand, non-genuine SPLENDA® Brand Sweeteners, and otherwise resulting in the tarnishment and/or blurring of HEARTLAND's valuable and famous brand name through association of SPLENDA® Brand Sweeteners with lesser quality, Chinese-manufactured sucralose sweetening products or other non-SPLENDA® branded products.

76.     Defendants have used HEARTLAND's SPLENDA IP for their own benefit, in connection with the sale of goods and services in Indiana and across the United States.

77.     To the extent that Defendants' use has been with the intent to use the yellow packets as a generic indicator of non-branded sucralose-based sweetener, such misconduct is misleading to consumers and tarnishing/blurring of the SPLENDA® brand.

78.     Upon information and belief, Defendants' actions demonstrate an intentional, willful, knowing and malicious intent to trade on the goodwill associated with HEARTLAND and/or SPLENDA® Brand Sweeteners, and to dilute the distinctive quality of the famous SPLENDA® brand, resulting in irreparable injury to HEARTLAND.

79.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to HEARTLAND, and HEARTLAND is entitled to recover Defendants' profits, actual damages, treble damages, costs of this litigation, and reasonable attorneys' fees associate with this litigation.

80.     HEARTLAND is also entitled to preliminary and permanent injunctive relief.

## COUNT V

### Trademark Dilution under I.C. 24-2-1-13.5

81.     HEARTLAND incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 79 above as if fully and separately set forth in this section of the Complaint.

82.     The SPLENDA® mark is famous in Indiana and has been famous in Indiana since at least, but perhaps earlier than, 2004.

83.     The unauthorized commercial use of the SPLENDA® mark by Defendants began after the SPLENDA® mark became famous in Indiana.

84.     The unauthorized commercial use of the SPLENDA® mark by Defendants have caused or is likely to cause dilution of the distinctive quality of the SPLENDA® mark through either tarnishment or blurring or both.

85.     To the extent that Defendants' use has been with the intent to use the yellow packets as a generic indicator of non-branded sucralose-based sweetener, such misconduct is misleading to consumers and tarnishing/blurring of the SPLENDA® brand.

86.     HEARTLAND is entitled to injunctive relief against Defendants for its violations of I.C. 24-2-1-13.5.

87.     Upon information and belief, Defendants have been willful in its trading on the reputation of the SPLENDA mark, and/or causing dilution of the SPLENDA® mark.

88.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to HEARTLAND, and HEARTLAND is entitled to preliminary and permanent injunctive relief and to recover Defendants' profits, actual damages, treble damages, costs of this litigation, and reasonable attorneys' fees associate with this litigation.

## COUNT VII

### Preliminary and Permanent Injunctive Relief

89.     HEARTLAND incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 87 above as if fully and separately set forth in this section of the Complaint.

90.     As a result of Defendants violating HEARTLAND'S common law trademark rights in the SPLENDA IP, the Indiana State Trademark Act, and the Lanham Act; engaging in unfair competition; and using the SPLENDA IP in a way that is diluting and dilutive of the distinctive quality of the famous SPLENDA® Brand, HEARTLAND has suffered and will continue to suffer irreparable harm to its business and reputation in the marketplace as the leading provider of SPLENDA® branded low-calorie sweetener, which is wholly made in America.

91.     If Defendants are not enjoined from using the SPLENDA IP, HEARTLAND will continue to suffer irreparable harm.

92.     HEARTLAND is entitled to a preliminary and permanent injunction prohibiting Defendants from promoting, distributing, marketing, or otherwise selling any goods using the SPLENDA IP, as well as any and all other fair and equitable relief.

## COUNT VIII

### Corrective Advertising Damages

93.     HEARTLAND incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 91 above as if fully and separately set forth in this section of the Complaint.

94.     HEARTLAND is entitled to damages and equitable relief for Defendants' misconduct and infringing activities, including such orders from the Court, whether injunctive or otherwise, directing that Defendants engage in such advertisements as reasonably required to:

    a.  Correct the misinformation in the marketplace that its sucralose-based products are genuine SPLENDA® Brand Sweetener products; and

    b.  Give notice to all of Defendants' customers, including customers of Defendants' franchisees and affiliates that Defendants' sucralose-based sweetener is actually sourced from China, and is not manufactured in the United States like genuine SPLENDA® Brand Sweetener.

## PRAYER FOR RELIEF

WHEREFORE, HEARTLAND respectfully requests that this Court enter judgment against Defendants as follows:

A.  Finding that:

    i.  Defendants violated 15 U.S.C. §§ 1114(a), 1125(a) and 1125(c) and other statutory and common law authority, including unfair competition, committing trademark

infringement, false advertising, and dilution, directly, contributorily and/or vicariously, by knowing and intentional unauthorized use of the SPLENDA IP and other HEARTLAND marks; and

B.  Ordering that:

    i.  Pursuant to common law, equitable principles, the Lanham Act and other statutes, Defendants and their owners, partners, officers, directors, agents, servants, employees, representatives, licensees, subsidiaries, manufacturers and distributors, jointly and severally, are enjoined during the pendency of this action, and permanently thereafter from:

        i.  Directly or contributorily infringing on the SPLENDA IP or other HEARTLAND marks in any manner;

        ii.  Marketing, advertising, selling, promoting, exhibiting, or displaying any product using the SPLENDA IP or other HEARTLAND marks; and

        iii.  Directly or contributorily using any false description, representation, or designation, or otherwise engaging in conduct that is likely to create an erroneous impression that Defendants' provide SPLENDA® Sweetener or are otherwise endorsed by, sponsored by, or connected with HEARTLAND;

        iv.  Holding itself out or contributing to  any franchisee or affiliate to hold themselves out as an authorized user of the SPLENDA IP or other HEARTLAND marks;

      v.   Offering for sale or contributing to any franchisee or affiliates offer for sale of any sweetener of any type (except genuine SPLENDA® Brand Sweetener) in a yellow packet; and

     vi.   Such other equitable and injunctive relief to which HEARTLAND may show itself otherwise entitled.

ii.   Pursuant to common law, the Lanham Act, and other statutes, HEARTLAND is awarded such damages available under federal and Indiana law, including but not limited to:

      i.   Actual damages;

     ii.   Statutory damages;

    iii.   Defendant's profits;

     iv.   The costs of corrective advertising;

      v.   Punitive damages;

     vi.   Treble damages;

    vii.   Costs of this litigation;

   viii.   Attorneys' fees associated with this litigation;

     ix.   All other damages arising from the unlawful and unauthorized use of the SPLENDA IP or other HEARTLAND marks; and

      x.   All other just and proper relief.

## **JURY DEMAND**

HEARTLAND demands a trial by jury on all issues so triable.

Respectfully submitted,


 /s/Jonathan G. Polak
JONATHAN G. POLAK (Atty. No. 21954-49)
CRISTINA A. COSTA (Atty. No. 31271-29)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46240
(317) 713-3500
Jpolak@taftlaw.com
ccosta@taftlaw.com