**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

HEARTLAND CONSUMER PRODUCTS LLC )
and TC HEARTLAND, LLC, )
                                      )
              Plaintiffs, )
                                      )
        v. )            Cause No. 1:17-cv-01035-LJM-TAB
DINEEQUITY, INC., APPLEBEE'S )
FRANCHISOR LLC, APPLEBEE'S )          Judge Larry J. McKinney
RESTAURANTS LLC, APPLEBEE'S )
SERVICES, INC., INTERNATIONAL )     Magistrate Judge Tim A. Baker
HOUSE OF PANCAKES, LLC f/k/a )
INTERNATIONAL HOUSE OF )
PANCAKES, INC., IHOP )
FRANCHISING LLC, IHOP FRANCHISE )
COMPANY, LLC, and IHOP )
FRANCHISOR, LLC )
                Defendants. )

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Plaintiffs — once themselves sued by the then-makers of Splenda for using the color yellow on sucralose sweetener packaging, and now the owner of the Splenda trademark — bring this scattershot suit against eight separate entities. Plaintiffs allege that sucralose sweetener in yellow packets prominently marked with "Applebee's" or "IHOP" and unspecified statements of unspecified employees imposes liability (directly, contributorily, or vicariously) on all of the Defendants for trademark infringement, unfair competition, false designation of origin, and dilution.

The Complaint fails in at least two respects. First, Plaintiffs cannot allege any act of wrongdoing or infringement, as a matter of law, because the color yellow is not protectable for the sucralose sweetener packaging at issue here. Second, even to the extent any acts of wrongdoing could be properly pled, the Complaint fails to explain how any of the Defendants are

responsible for those acts. Accordingly, a matter of law, Plaintiffs' Complaint fails to state a claim against any of the Defendants, and should therefore be dismissed.

## I.     THE IMPRECISE ALLEGATIONS OF THE COMPLAINT

The Complaint alleges, upon information and belief, that (i) DineEquity, Inc. ("DineEquity") owns Applebee's and International House of Pancakes ("IHOP") restaurants, (ii) Applebee's Franchisor LLC, Applebee's Restaurants LLC, International House of Pancakes, LLC f/k/a International House of Pancakes, Inc., and IHOP Franchisor LLC (collectively, the "Franchisor Defendants") are "in the business of franchising," or "in the business of serving as franchisor," (iii) Applebee's Services, Inc., is "in the business of training independent business persons" operating Applebee's restaurants, and (iv) IHOP Franchising LLC and IHOP Franchise Company, LLC (collectively, the "IHOP Parents") are limited liability companies, whose sole members are in the chain of ownership to DineEquity, Inc. (Compl., ¶¶ 11-18.) With regard to the four Franchisor Defendants, the Complaint alleges that each "maintains significant control over the acts of its franchisees." (*Id.* ¶¶ 12, 13, 15, 16.)

The Complaint then goes on to allege that the Plaintiffs own various trademark registrations and applications which, together with "any and all common law rights in the United States" are collectively defined as the "SPLENDA IP," which is alleged to be famous.  (*Id.* ¶ 29, 32.)   A review of the registrations and applications cited therein[1] shows a disparate group of

---

[1]  Reg. No. 4172135 for ; Reg. No. 4172136 for ; Reg. No. 4165028 for ;

Reg.   No.   4165029   for ;   Reg.   No. ;   Reg.   No.   4122311   for

marks, none of which are specifically referenced in the allegations regarding the Defendants' conduct.

Indeed, paragraph 38 of the Complaint sets forth "Defendants' specific conduct," namely, (a) alleged oral representations made to customers at Applebee's and IHOP restaurants, and (b) "failing to provide sufficient cues" to the customers that the yellow sweetener packets provided were not SPLENDA-branded sweetener. (*Id.* ¶ 38.) The Complaint further alleges that Defendants "with knowledge or reckless disregard of [Plaintiffs'] rights in the SPLENDA IP" have "contributed to franchisee misidentification of non-SPLENDA® sweetener as actual SPLENDA® Brand Sweetener" and "failed to take reasonable precautions against the occurrence of franchisee's infringing conduct." (*Id.* ¶¶ 39-40.)

The Complaint also alleges that particular IHOP and Applebee's restaurants were "randomly selected" and visited, and that a number of these restaurants "affirmatively represented, through their agents or employees, that non-SPLENDA® sucralose sweetener was instead SPLENDA® Brand Sweetener." (*Id.* ¶ 45.) It does not identify which specific



; Reg. No. 4187229 for                                    ; Reg. No. 4202774 for                                    ; Reg. No. 4230392 for                              ; Reg. No. 4238101 for                          ; Reg. No. 4106164 for                        ; Reg. No. 4664653 for SPLENDA LIVING; Reg. No. 4744600 for CUANDO PIENSES AZUCAR USA SPLENDA; Reg. No. 1544079 for SPLENDA; Reg. No. 3346910 for SPLENDA; App. No. 86865337 for THINK SUGAR USE SPLENDA; App. No. 87012521 for                        ; and App. No. 87010504 for SPLENDA ZERO.

restaurants were visited. It does not identify when any of these restaurants were visited. Crucially, it does not identify what statements were actually made, by whom, or which Defendants, if any, are responsible for the conduct of the employees at the stores visited.

With regard to Count I, for common law and federal trademark infringement, Plaintiffs allege — without regard to which Defendants are accused — that the Defendants generally "used the SPLENDA® trademark" without any explanation or support for what "used" means in that context, or in what capacity Defendants acted or how they purportedly had control over and duty to control that action.  (*Id.* ¶ 51.)   With regard to Count II, for false designation of origin, Plaintiffs allege—again, without regard to which Defendants are accused (or in what capacity or under what control)—that the Defendants' "identification" and offer for sale of non-Splenda brand sweetener in yellow packets constitutes false designation of origin.  (*Id.* ¶¶ 60-61.)

In what appears to be an attempt to rectify that lack of specificity, the Plaintiffs then broadly allege that, to the extent the alleged "unlawful activities" were performed by "not by Defendants directly, but through the acts or omissions of its [sic] franchisees or affiliates" that "Defendants" are contributorily or vicariously liable. (*Id.* ¶¶ 56, 65.)  Similarly, with regard to Count III, for unfair competition, the Plaintiffs allege a laundry list of "particulars" that are as broad-brushed as "[u]nauthorized use of the SPLENDA® Brand (and other marks) in connection with the offering of goods and services at Defendants' places of business." (*Id.* ¶ 69.)  Likewise, with regard to Counts IV and V, Plaintiffs allege broadly that, "[t]o the extent that Defendants' use has been with the intent to use the yellow packets as a generic indicator of non-branded sucralose-based sweetener, such misconduct is misleading to consumers and tarnishing/blurring of the SPLENDA® brand."  (*Id.* ¶¶ 77, 85.)

## II.    THE COMPLAINT DOES NOT AND CANNOT STATE A CLAIM

The Complaint is devoid of any specific facts that would constitute a viable claim for trademark infringement, false designation of origin, unfair competition, or dilution. A Rule 12(b)(6) motion to dismiss challenges a plaintiff's complaint as failing to sufficiently state a claim on which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see* Fed. R. Civ. P. 8(a)(2).

Although a complaint need not provide detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic*, 355 U.S. at 555 (citations omitted); *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) ("formulaic recitations" that all defendants are liable "does not put the defendants on notice of what exactly they might have done" and therefore violate Rule 8); *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8").  "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'"  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).  A claim may be deemed facially viable "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 672, 677 (2009).

A.    **Plaintiffs' Infringement, False Designation of Origin, and Dilution Claims Fail as a Matter of Law**

Each of Plaintiffs' claims for infringement, false designation of origin, and dilution (Counts I-V) rests on the Defendants alleged provision, or contributory or vicarious liability for its franchisees' or affiliates' alleged provision, of yellow packets of sucralose. (Compl. ¶¶ 52, 56, 61, 65, 69, 77, 85.)  But it is well established that consumers rely on color-coding to differentiate between different forms of sugar substitutes, *i.e.,* that color serves a functional purpose and is therefore unprotectable as trade dress.  *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 566 F. Supp. 2d 378, (E.D. Pa. 2008) ("As the number of sugar and sugar substitutes has increased, color-coding in packaging has developed as a means of differentiating products and quickly identifying the active ingredient in a given product."); *NutraSweet Co. v. Stadt Corp.*, 917 F.2d 1024, 1028 (7th Cir. 1990) (holding that color alone is not a protectable trademark for sweetener on the basis that to hold otherwise "might create a barrier to otherwise lawful competition in the tabletop sweetener market."); *Cumberland Packing Corp. v. Monsanto Co.*, 32 F. Supp. 2d 561, 568 (E.D. N.Y. 1999) ("in this industry consumers associate the color blue with aspartame sweeteners and the color pink or red with saccharin sweeteners.  Thus, the dominant coloring of the boxes serves a functional purpose and does not differentiate them from other products.") (citations omitted).

Plaintiffs are well aware that their yellow Splenda packaging was previously litigated and established to be unprotectable as a trade dress.  Prior to purchasing the rights in the Splenda brand from McNeil Nutritionals, LLC (Compl. ¶ 23), Heartland manufactured and packaged a number of store-brand artificial sweeteners for grocery chains such as Food Lion, Safeway, and Wal-Mart. *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 355 (3d Cir. 2007).  In 2006, McNeil sued Heartland for infringement, alleging that Heartland's packaging of

sweeteners for those retailers was confusingly similar to its Splenda packaging.  *Id*. at 356.  The Third Circuit, on appeal of a denial of preliminary injunction, found, among other things, that the Safeway and Food Lion boxes were non-confusing because they prominently displayed the logo and name of each store and that the stores were well-known to the customers who shopped there. *Id.* at 361.

Here, too, the packets at the center of this litigation do not use the SPLENDA word mark, and in fact, do not use *any* of the word marks or trade dress covered in the applications or registrations defined in the Complaint as the SPLENDA IP. *See* § I, FN 1, *supra*.  Instead, just like the boxes in *McNeil* prominently featured the names and logos of the retailers, the packets at issue in this case prominently feature the names and logos of Applebee's and IHOP restaurants:




(Compl. ¶ 46.)  Indeed, just as in *McNeil*, and in *NutraSweet* and *Cumberland* before it, the yellow packaging here serves a functional purpose, to inform consumers that the sweetener inside is sucralose, and to differentiate it from the similarly-branded white packets (sugar), pink packets (saccharin), and blue packets (aspartame). Accordingly, insofar as Plaintiffs' Complaint is premised on yellow sucralose packaging, it fails as a matter of law.

The Complaint obliquely alleges too that Defendants' conduct was wrongful because they provided the yellow packet displayed above "without sufficient cues" that they did not contain Splenda.  (Compl. ¶¶ 38, 52, 61, 69.)  This allegation is merely a restatement of

Plaintiffs' untenable claim of rights in the yellow color for packets. In fact, by using the famous Applebee's and IHOP marks and logos rather than the Splenda mark or logo, the restaurants could not have provided more significant cues for consumers to choose their preferred sweetener, and to communicate that the source of that sweetener was Applebee's or IHOP.

Without the core allegation that any of the Defendants' use of (or permitting franchisees' use of) yellow packets of sucralose is infringing, Plaintiffs' claims for infringement, false designation of origin, and dilution (Counts I-V) fail as a matter of law, and should be dismissed.

**B. Plaintiffs' Claims for Particular Relief Fail**

Counts VII and VIII[2] appear to be mere restatements of the prayer for relief, rather than bases for recovery. Accordingly, they too fail to state a claim because they fail to articulate any independent cause of action on which such requested relief would rest.

**III. THE COMPLAINT FAILS TO STATE A CLAIM BASED ON ANY THEORY AGAINST THE DEFENDANTS**

Even assuming, *arguendo,* that Plaintiffs can establish a claim based on the allegations pled in the Complaint, this Court should still dismiss the Complaint because it fails to establish any theory of recovery from any of the named Defendants.

**A. The Complaint Fails to Satisfy the Pleading Requirements of Rule 8**

As a threshold matter, the Complaint violates the pleading requirements of Rule 8 of the Federal Rules of Procedure. Where, as here, there are multiple defendants, each defendant is entitled to understand the specific conduct that it allegedly did that is asserted to be wrongful. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be

---

[2]     The Complaint does not include a Count VI.

dismissed"); *Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc*., 571 F. Supp. 2d 882, 885 (N.D. Ill. 2008) (dismissing complaint that grouped together separate entities and failed to state which entity plaintiff sought to hold responsible for which breach); *Bell v. McCann,* No. 1:13-cv-00799, 2014 U.S. Dist. Lexis 29489, at *5 (S.D. Ind., March 7, 2014) (dismissing complaint under Rule 8 and finding that plaintiff "is required to do more than recite legal conclusions of conduct with generic applicability to various defendants").

Nearly all of the allegations of the Complaint refer to "Defendants" activities. (*See* Compl. ¶¶ 38-94.)  They do not allege that any one of the Defendants did any particular act or made any particular omission, despite the Complaint's apparent recognition that each Defendant is a separate legal entity and that they have discrete functions. (*See* Compl. ¶¶ 11-18.)  This is contrary to the requirements of notice pleading under Federal Rule of Civil Procedure 8.  *Bank of Am.,* 725 F.3d 815, 818.

Here, to the extent that Plaintiffs have pled any claim based on collective responsibility (and, as set forth in § II, *supra*, Defendants do not concede that they have), they have utterly failed to set forth which Defendants are responsible for that behavior.  This obfuscation appears to be intentional.  Even while alleging that Plaintiffs enlisted private investigators to make specific visits to specific restaurants (Compl. ¶ 45), Plaintiffs fail to provide details regarding those visits, or to allege which Defendants are responsible for the products provided or statements made therein.  This fails to put any of the Defendants on notice of the specific allegations against it and thus fails to meet the requirements of Rule 8.

**B.    Plaintiffs Fail to State Any Theory of Recovery from Defendants**

Moreover, Plaintiffs are unable to cure the pleading deficiencies because the named Defendants cannot be held liable for the alleged wrongdoing under any theory of liability as pled in the Complaint.

1.      *DineEquity, the IHOP Parents, and Applebee's Services, Inc. are Improper Parties to this Suit*

Plaintiffs fail to plead actual facts sufficient to support any theory of liability against DineEquity, IHOP Parents, or Applebee's Services, Inc.  Plaintiffs allege that DineEquity is the corporate parent company of the Franchisor Defendants, and that the IHOP Parents are in the chain of ownership of one of the IHOP Franchisor Defendants.  (Compl. ¶ 11, 17, 18.)  As a parent company, DineEquity does not operate any IHOP or Applebee's restaurants, and Plaintiffs do not—and cannot—plead otherwise.  In addition, as Plaintiff should have discovered through its reasonable pre-filing investigation, the IHOP Parents no longer exist, having each been merged into International House of Pancakes, LLC in 2014.  These mergers are reflected in publicly-available Delaware Secretary of State records. Plaintiffs have not pled any facts to show a plausible claim against DineEquity or the IHOP Parents, as opposed to any claims they might allege against unnamed, individual franchise restaurants. Accordingly, DineEquity and the IHOP Parents are improper parties and all claims against them should be dismissed. *Bright v. Roadway Servs.*, 846 F. Supp. 693, 700 (N.D. Ill. 1994) (dismissing case against parent company and holding that "as a general rule, a parent company is not liable for the acts of its subsidiary").

Moreover, to assert claims against DineEquity, the IHOP Parents, or Applebee's Services, Inc., Plaintiffs must plead facts that establish that those parties are involved in the Franchisor Defendants' or the unnamed individual franchisees' alleged wrongful conduct. Instead of alleging specific facts regarding these parties' involvement or role in the alleged wrongdoing, with respect to DineEquity, Plaintiffs seek to bring the entire chain of ownership into liability by alleging that "DineEquity and /or its related entities/purchasing agent" purchased SPLENDA Brand Sweetener at some time between 2009 and 2013.  (Compl. at ¶¶ 35-37.)  In the case of the IHOP Parents and Applebee's Services, Inc., Plaintiffs do not provide any basis at all

for accusing them of liability.  As explained above, such lack of detail violates the pleading requirements of Rule 8.

Further, Plaintiffs fail to plead any basis for piercing the corporate veil.  This Court's holding in *JLW-TW Corp v. Merch. Capital, LLC* is instructive.  In that case, plaintiff similarly lumped together multiple defendants, including the parent company, and alleged that "Defendants (all of them) took certain actions." No. 1:15-cv-1656-WTL-DML, 2016 U.S. Dist. LEXIS 50186, at *3 (S.D. Ind. Apr. 14, 2016).  This Court found that the plaintiff did not "distinguish between the Defendants in any way other than to state that [the parent] is the 'managing entity of' other defendants.  *Id.* at *4.  This Court went on to find that the complaint failed to plead any "plausible basis for piercing the corporate veil" and that simply being the parent or managing entity of another entity is insufficient to assign liability to the parent company and pierce the corporate veil. *Id.*  Likewise, here, Plaintiffs' lumping together of all the Defendants and the corporate chain of subsidiaries is insufficient to state a claim against DineEquity. Accordingly, at a minimum, DineEquity and the IHOP Parents should be dismissed.

### 2.  The Franchisor Defendants are Improper Parties to this Suit

Likewise, Plaintiffs fail to plead facts sufficient to support their theory of liability against the Franchisor Defendants.  Plaintiffs' broad-sweeping allegations that the Franchisor Defendants "maintain[] control over the acts of [their] franchisees" (Compl. ¶¶ 12, 13, 15, 16) are merely conclusory and fail to state a viable theory of liability under either vicarious or contributory liability.  The naked allegations of control without any facts to support those allegations fail to state any plausible theory of liability.  *Ashcroft v. Iqbal*, 556 U.S. at 679 ("while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

The existence of a franchise relationship does not automatically confer liability from the franchisee to the franchisor. *Brunner v. Liautaud*, No. 14-C-5509, 2015 U.S. Dist. LEXIS 46018, at *16 (N.D. Ill. Apr. 8, 2015). While in certain circumstances a franchisor can be held vicariously liable for the wrongdoings of a franchisee, courts have held imputation of liability is only justified when "the franchisor controls or has a right to control the specific policy or practice resulting in harm to plaintiff." *Depianti v. Jan-Pro Franchising Int'l, Inc*., 465 Mass. 607, 990 N.E.2d 1054, 1064 (Mass. 2013); *see also Oberlin v. Marlin Am. Corp.,* 596 F.2d 1322, 1327 (7th Cir. 1979) (holding that licensing of trademark "does not give licensor control over the day-to-day operations of a licensee beyond that necessary to ensure uniform quality of the product or service in question.   It does not automatically saddle the licensor with the responsibilities under state law of a principal for his agent"); *Courtland v. GCEP-Surprise, LLC*, 2013 U.S. Dist. LEXIS 105780, at *6 (D. Ariz. July 29, 2013) (no franchisor liability where "[f]ranchisor supervision does not extend [] to control over an instrumentality of franchisee harm").

Further, "a company's issuing of certain quality control measures to ensure brand uniformity cannot be used as evidence of a franchisor's control of independent franchisee actions, thereby, triggering liability." *Holt v. Massage Envy Franchising, LLC,* No. 3:16-cv-01087-DRH-SCW, 2017 U.S. Dist. LEXIS 90148, at *14 (S.D. Ill. June 9, 2017); *Brunner*, 2015 U.S. Dist. LEXIS 46018, at *16 (holding that plaintiff had not pled sufficient facts to demonstrate franchisor's control, despite the fact that "[a] franchisor, which may have thousands of stores located throughout the country, often imposes comprehensive and meticulous standards to protect its brand and operate the franchises in a uniform way in order to maintain a consistent customer experience").

Here, Plaintiffs do not allege any facts supporting a theory that the Franchisor Defendants are vicariously liable for the allegedly wrongful acts of the independent franchisee's employees. The Complaint is devoid of any allegations concerning the specific control that the Franchisor Defendants have regarding any policy or practice that could have plausibly led to the allegations in the Complaint. Plaintiffs do not allege any facts, nor could they, regarding Franchisor Defendants' control over their independent franchisees' employees related to the provision of sucralose sweeteners to customers. *See SB Designs v. Reebok Int'l, Ltd.,* 338 F. Supp. 2d 904, 912 (N.D. Ill. 2004) (finding that plaintiffs failed to establish any control of alleged infringing party because defendants did not provide the infringing product or permitted the sale or use of the infringing product); *Holt*, 2017 U.S. Dist. LEXIS 90148, at *14 (granting motion to dismiss claims against franchisor based on activities of franchisee's employees because the franchisor "cannot be liable for the actions of independent franchisee's employees").

Nor do Plaintiffs plead any facts that the Franchisor Defendants are contributorily liable for the alleged infringing actions or that they participated in the alleged wrong of the individual franchisees. To plead contributory liability, Plaintiffs must plead facts showing that each Defendant "induce[d] another to infringe or…continue[d] to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Hard Rock Cafe Licensing Corp. v. Concession Services Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992). Here, the Complaint fails to allege that the Franchisor Defendants either induced IHOP or Applebee's franchisees to infringe or that the Franchisor Defendants supplied any alleged infringing products. To the contrary, Plaintiff fails to allege any facts to show how the Franchisor Defendants' allegedly contributed to the actions of unnamed and unspecified independent franchisees' employees at various locations through the United States.

Without such allegations, Plaintiffs cannot establish a claim based on vicarious or contributory liability against the Franchisor Defendants. *Ashcroft v. Iqbal*, 556 U.S. at 679 (a complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555-57).

## IV.    CONCLUSION

Plaintiffs have not and cannot state a claim against Defendants, and their Complaint should be dismissed for at least three reasons.  First, Plaintiffs' claims are based on a theory of infringement (*i.e.,* that color is protectable for sweetener) that has been roundly rejected. Second, even to the extent they could plead any acts of wrongdoing, their Complaint lumps all of the Defendant entities together, and fails to provide any information about which is responsible for what alleged acts. Third, Plaintiffs fail to state a claim under any theory of liability against Defendants. Accordingly, a matter of law, Plaintiffs' Complaint should be dismissed.

Respectfully submitted,

/s/Michael G. Kelber
Michael G. Kelber (*pro hac vice* pending)
Katherine Dennis Nye (*pro hac vice*
pending)
Collette Brown (*pro hac vice* pending)
NEAL, GERBER & EISENBERG LLP
2 N. LaSalle St. Suite 1700
Chicago, IL 60602
Phone: (312) 269-8000
Email: mkelber@nge.com, knye@nge.com,
cbrown@nge.com
Attorneys for Defendants

/s/ Caitlin R. Byczko
Caitlin R. Byczko, Atty. No. 31905-49
BARNES & THORNBURG LLP
11 South Meridian St.
Indianapolis, IN 46204
Phone: (317) 231-7550
Fax: (317) 713-3699
Email: cbyczko@btlaw.com

14

Attorney for Defendants

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was served this August 17, 2017, by electronically filing the same with the Clerk of the Court using the CM/ECF system which sent notification of such filing to:

Jonathan G. Polak
Cristina A. Costa
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
Phone: (217) 713-3500
Fax: (317) 713-3699
Email: jpolak@taftlaw.com; ccosta@taftlaw.com
Attorneys for Plaintiff Heartland Consumer Products, LLC and TC Heartland LLC

*Signed: Caitlin R. Byczko*

26593390.9