UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HEARTLAND CONSUMER PRODUCTS LLC, ) | |
| TC HEARTLAND, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:17-cv-01035-SEB-TAB |
| ) | |
| DINEEQUITY, INC., ) | |
| APPLEBEES SERVICES, INC., ) | |
| IHOP FRANCHISING LLC, ) | |
| INTERNATIONAL HOUSE OF PANCAKES, ) | |
| LLC, ) | |
| IHOP FRANCHISOR LLC, ) | |
| APPLEBEES FRANCHISOR LLC, ) | |
| APPLEBEES RESTAURANTS LLC, ) | |
| APPLEBEE'S INTERNATIONAL, INC., ) | |
| IHOP RESTAURANTS LLC, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL**

## I. Introduction

At issue is Plaintiffs' motion to compel Defendants to produce 46 email exchanges that Defendants withheld as privileged, and in one instance as both privileged and work product. Plaintiffs argue that the email exchanges are neither privileged nor work product, and challenge Defendants' privilege log, arguing it gives inadequate information to establish that the communications are privileged. Plaintiffs also argue Defendants waived the attorney-client privilege by including a third party in their communications. The thrust of Plaintiffs' argument is that Defendants' privilege log describes business issues involving lawyers, rather than the exchange of legal advice.

As discussed below, Defendants generally carry their burden of establishing that the withheld communications are privileged. However, for nine of the communications it is not clear what role an attorney played in the conversation. The Court will permit Defendants to submit the nine communications for *in camera* review.[1] Therefore, the Court denies Plaintiffs' motion [Filing No. 76] in part, pending *in camera* review of the nine communications.

## II. Background

Plaintiffs Heartland Consumer Products LLC and TC Heartland, LLC, manufacture, market, and sell Splenda, which is a sucralose-based sweetener. As a part of this business, Plaintiffs own various Splenda trademarks. Plaintiffs allege that Defendants require their franchised and company owned stores to provide their customers a non-Splenda sucralose-based sweetener in a yellow packet similar to the yellow packets Plaintiffs use for Splenda. Plaintiffs allege Defendants infringe on their trademarks by confusing patrons at Defendants' stores into believing the sweetener in the yellow packets is Splenda. Plaintiffs contend that Defendants fail to provide sufficient cues that the packets do not contain Splenda, and fail to train their employees to dispel patrons' mistaken beliefs that the packets contain Splenda.

Defendants[2] own and franchise Applebee's and International House of Pancakes restaurants. Defendants argue Plaintiffs do not and cannot own any trademark in the color yellow in connection with the Splenda mark. Defendants also contend there is no likelihood of confusion because their yellow sweetener packets are branded with the Applebee's and IHOP

---

[1] [Filing No. 77-1 (Doc. IDs. 552, 693, 780, 789, 830, 1011, 1035, 1088, and 1110).]
[2] The Defendants are DineEquity, Inc., Applebee's Franchisor LLC, Applebee's Restaurants, LLC, Applebee's Services, Inc., International House of Pancakes, LLC, IHOP Franchisor, LLC, IHOP Restaurants, LLC, and Applebee's International, Inc.

logos, and even if there were confusion with the Splenda mark, Splenda has become a generic term for sucralose sweetener.

In their discovery, Plaintiffs have sought information related to Defendants' decision to use yellow packets for their sucralose sweetener. Defendants' response included a privilege log noting that they withheld exchanges with Centralized Supply Chain Services, LLC, claiming the exchanges were protected by attorney-client privilege and that one was also work-product. Plaintiffs and Defendants dispute the clarity of the relationship between CSCS and Defendants. Nonetheless, Plaintiffs and Defendants agree that CSCS is a distinct entity from Defendants and is the only authorized purchasing entity for Defendant DineEquity, Inc.

CSCS and DineEquity entered into an agreement with non-party Domino for CSCS and Defendants to source sweeteners from Domino, including the yellow-packeted sucralose sweetener at the heart of this suit. Defendants contend that the withheld communications concern legal issues, including licensing and indemnification agreements, arising from negotiations between Domino on the one hand and DineEquity and CSCS on the other.

Plaintiffs now seek to compel Defendants to produce 46 communications Defendants are withholding.

**III. Discussion**

Plaintiffs make three principal arguments in support of their motion to compel: 1) Defendants failed to provide enough information in their privilege log to show that the exchanges are covered by attorney-client privilege, 2) if the exchanges were privileged, the privilege was destroyed by the presence of a third party with whom Defendants did not have an identical common interest, and 3) the exchange marked as work product was not made in preparation for litigation.

In discovery, parties are generally entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Privileged matter may be withheld, but if a party believes that material has been improperly withheld, the party may move for the Court to compel production. *See* Fed. R. Civ. P. 26(b)(5)(A); Fed. R. Civ. P. 37(a); Local Rule 37-1. The party opposing a motion to compel has the burden to show the discovery requests are improper. *Cunningham v. Smithkline Beecham, 255 F.R.D. 474, 478 (N.D. Ind. 2009)*.

### a. Facial Sufficiency of Defendants' Privilege Log

Plaintiffs argue that Defendants' privilege log fails to provide enough information to show that the 46 documents contain privileged information. With respect to all 46 communications, Plaintiffs assert that "[t]he information provided does not explain that legal advice was actually solicited or received, who was seeking the legal advice from whom or what the legal advice was regarding." [Filing No. 77, at ECF p. 9.] Plaintiffs also point to three specific communications for which no attorney is listed in the privilege log as being party to the communication,[3] and nine communications in which Defendants' attorneys were only listed in the "CC" line.[4] Defendants respond that their logs included the necessary information, and in some cases, information was accidentally omitted.

Attorney-client privilege is a federal common law doctrine that allows people to withhold relevant "confidential communications made for the purpose of facilitating the rendition of professional legal services." *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007) (quoting Proposed Fed. R. Evid. 503(b), 56 F.R.D. 183, 236 (1972)). Attorney-client privilege is

---

[3] [Filing No. 77-1 (Doc. IDs 95, 114, and 485).]
[4] [Filing No. 77-1 (Doc. IDs. 552, 693, 780, 789, 830, 1011, 1035, 1088, and 1110).]

a double-edged sword. On one hand, it is necessary because "[o]pen communication assists lawyers in rendering legal advice, not only to represent their clients in ongoing litigation, but also to prevent litigation by advising clients to conform their conduct to the law and by addressing legal concerns that may inhibit clients from engaging in otherwise lawful and socially beneficial activities." *Id.* On the other, the privilege necessarily denies courts relevant information "in derogation of the search for the truth." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). To keep these interests balanced, courts must strictly confine the privilege, and any application of attorney-client privilege must be "consistent with the underlying purposes" of the privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).

For a communication to be protected by attorney-client privilege, the communication must have been made "(1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *BDO Seidman*, 492 F.3d at 815.

The party resisting production must expressly invoke the privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii). Parties commonly comply with the requirements for asserting a privilege by providing a privilege log such as described in *In re Bridgestone/Firestone, Inc., ATX, ATX II*, 129 F. Supp. 2d 1207, 1218-19 (S.D. Ind. 2001), which directed the parties to use a privilege log that contained:

> "(1) the name and job title or capacity of the author(s)/originator(s); (2) the names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party; (3) a general description of the document by type (*e.g.,* letter, memorandum, report); (4) the date of the document; and (5) a general description of the subject matter of the document."

5

The parties agree that these five elements must be included in their logs. [Filing No. 77, at ECF pp. 6-7; Filling No. 79, at ECF p. 8.]

Plaintiffs first challenge the descriptions of the general subject matter of the documents. Plaintiffs posit that the privilege log "does not explain that legal advice was actually solicited or received, who was seeking legal advice from whom or what the legal advice was regarding." [Filing No. 77, at ECF p. 9.] Plaintiffs contend the descriptions suggest purely business discussions, rather than legal advice, and point to three descriptions as examples:

> Discussion between DineEquity employees, their agents, and their counsel re: waiting for fully executed trademark license agreement and supplier services agreement before beginning to source from Domino.
>
> Discussion between DineEquity employees, their agents, and their counsel re: impact of existing supplier services agreement with Domino on sweetener product transition, related trademark license agreement between DineEquity and Domino, and Domino indemnification.
>
> Discussion between DineEquity employees, their agents, and their counsel re: negotiation of trademark license agreement [with respect to] specific marks covered and description of products.

[Filing No. 77, at ECF pp. 8-9, (quoting Filing No. 77-1, at ECF pp. 1 (Doc. IDs 17, 34), 11 (Doc. ID 830)).]

The Court struggles to comprehend what information is supposedly lacking. In connection with each description, the log lists the senders and recipients of the communications. [Id.] The most reasonable reading of these descriptions is that they pertain to emails seeking and giving advice regarding the legal impacts of the listed topics. The Court will not require disclosure simply because the Defendants did not add "the legal impacts of" to each description. The mere suggestion that the descriptions could be read in a broad enough way that they could describe non-legal advice does not persuade the Court to ignore the most obvious reading.

Plaintiffs next challenge 12 communications that the privilege log suggests had little or no involvement by legal counsels for either Defendants or CSCS. Plaintiffs point to nine emails

6

where the only attorney involvement is in the "CC" field—i.e. a "carbon copy" of the email was sent to the attorney in conjunction with a communication between two or more non-attorneys. Plaintiffs fail to effectively develop this issue, and Defendants' response does not offer much substance either. Still, Plaintiffs challenge the sufficiency of the information in Defendants' log, and hidden in a discussion of the common interest doctrine in Plaintiffs' reply are citations to *United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997), and *Wierciszewski v. Granite City Illinois Hosp. Co., LLC*, No. 11-CV-120-GPM-SCW, 2011 WL 5374114, at *1-2 (S.D. Ill. Nov. 7, 2011). Plaintiffs rely on these cases to argue that copying an attorney does not render the email attorney-client privileged. Defendants respond that the log is sufficient.

It is true that "simply copying a lawyer on an otherwise non[-]privileged communication will not transform the non-privileged document into a privileged one." *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 237 (N.D. Ill. 2014) (collecting cases). On the other hand, courts have held that the attorney being in the CC, rather than To or From, column is not prima facie evidence that the email is not privileged. *See*, *e.g. Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 448 (D. Minn. 2011). The deciding issue is whether the communications sought legal advice from a lawyer, and the typical manner to resolve the dispute when the attorney is only copied on the communication is *in camera* review of the documents. *See*, *e.g. Carr v. Fed. Bureau of Prisons*, 2:14-CV-00001-WTL-MJD, 2017 WL 2957972, at *4 (S.D. Ind. July 10, 2017); *McCullough*, 304 F.R.D. at 237; *Hamdan v. Ind. U. Health N., LLC*, 1:13-CV-00195-WTL-MJD, 2014 WL 2881551, at *5 (S.D. Ind. June 24, 2014); *Bartholomew*, 278 F.R.D. at 448; *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 517 (2009); *Steele v. Lincoln Fin. Grp.*, No. 05 C 7163, 2007 WL 1052495, at *2 (N.D. Ill. Apr. 3, 2007); *Bell Microproducts, Inc. v. Relational Funding Corp.*, No. 02 C 329, 2002 WL

7

31133195, at *1-2 (N.D. Ill. Sept. 25, 2002); *Cont'l Ill. Nat. Bank & Tr. Co. of Chicago v. Indem. Ins. Co. of N. Am.*, No. 87 C 8439, 1989 WL 135203, at *3 (N.D. Ill. Nov. 1, 1989).

Given that Defendants bear the burden of proving the communications are privileged, the Court could simply find that Defendants failed to meet their burden and order the documents be produced. Indeed, Plaintiffs argue that Defendants had opportunities to update their log, and should not be allowed a second bite at the apple. However, as discussed above, the descriptions in the privilege log are sufficient except for lacking an explanation of the attorney's role in the communication when he or she is in the CC column. Therefore, simply ordering Defendants to produce the communications is inappropriately hasty. Thus, Defendants shall have seven days from the date of this order to file the emails under seal for *in camera* review.

Plaintiffs next point out that an additional three of the emails do not have an attorney in the To, From, or CC column at all. [Filing No. 77, at ECF p. 4 (citing Filing No. 77-1, at ECF pp. 2 (Doc. ID 95), 3 (Doc. ID 114), 7 (Doc. ID 485)).] Defendants respond that they produced two of documents, Doc. IDs 114 and 485, but they were partially redacted. Defendants say that these redacted portions were communications to or from attorney Marilyn Wade. Plaintiffs understandably question how they were supposed to divine Wade's inclusion in the redacted portions when her name was redacted. However, Defendants' explanation of Wade's involvement in the redacted emails within the email chains satisfies their burden.

Defendants state the third document, Doc. ID 95, should have been removed from the log because it is entirely contained within Doc. ID 114, and by agreement, such duplicative documents need not be logged. Plaintiffs question the validity of this assertion by noting the descriptions are different: the description of Doc. ID 114 includes "negotiation of indemnification" but Doc. ID 95 does not. However, the Court is not surprised that a later email

8

in a thread would include new or additional information that an earlier email did not, and does not agree with Plaintiffs' contention that this portends an inaccurate privilege log.

Plaintiffs argue that Defendants have had the opportunity to remedy these deficiencies and should not be given a second bite at the apple. Plaintiffs ask the Court to order Defendants to turn over the communications based on *Jorling v. Anthem, Inc.*, No. 1:09-CV-0798-TWP-TAB, 2011 WL 3759189, at *3 (S.D. Ind. Aug. 25, 2011). [Filing No. 77, at ECF p. 5.] While *Jorling* recognizes that the Court may find that a party waived its privilege argument by providing an inadequate log, such waiver is not appropriate here. Defendants have made clear in their motion that the three emails are privileged, but they were improperly logged due to administrative oversights. The Court does not find waiver of privilege to be appropriate when it is based on a technical error, and the party has since shown the document to be privileged. *Cf. Schleicher v. Wendt*, 1:02-CV-1332-WTL-TAB, 2010 WL 1948218, at *2 (S.D. Ind. May 14, 2010) (waiver based on technical inadequacies is disfavored).

Plaintiffs assert in their reply brief that Defendants are required to support their privilege assertions with affidavits affirming the statements in the privilege log and that the contents of the withheld communications are privileged. Plaintiffs claim that the unsworn statements in the privilege log and Defendants' brief are insufficient evidence, and that without supporting affidavits, Defendants' claim of privilege necessarily fails. Plaintiffs' argument relies on three cases: *Rockies Express Pipeline LLC v. 58.6 Acres*, 1:08-CV-0751-RLY-DML, 2009 WL 5219025 (S.D. Ind. Dec. 31, 2009) [Filing No. 85, at ECF pp. 1-2], *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007), and *Heckler & Koch, Inc. v German Sport Guns GmbH*, 1:11-CV-01108-SEB-TAB, 2014 WL 900915, at *2 (S.D. Ind. Mar. 6, 2014) [Filing No. 85, at ECF p. 3].

9

However, none of these cases support Plaintiffs' position that a party defending against a motion to compel must submit sworn statements in support of an asserted privilege. Rather, in *Rockies Express*, 2009 WL 5219025, at *4, the court held that attorney-client privilege was waived due to the inclusion of a third party with no interest in the litigation; the court never mentioned the source of this information. Though the Seventh Circuit discussed the addressee, content, and purpose of the disputed communication in *BDO Seidman*, 492 F.3d at 816, it made no mention of the source of this evidence and in no way implied it was supported by sworn testimony or that it would have ignored the evidence had it not been supported by an affidavit. In *Heckler & Koch*, 2014 WL 900915, at * 2, neither the magistrate judge nor the district judge suggested HK needed to submit a sworn statement as factual support. Rather, the court found the plaintiff failed to make any response to the defendants' challenge to the commonality of interest after admitting the common interest was "nearly identical," but not identical. *Id.*[5]

### b. Common Interest Doctrine

The 46 exchanges at issue are communications that included CSCS employees. Defendants concede that CSCS is a separate entity, and that sharing privileged information with a third party generally destroys attorney-client privilege.[6] However, Defendants argue that

---

[5] Plaintiffs also make a passing reference to *U.S. v. 22.80 Acres of Land*, 107 F.R.D. 20 (N.D. Cal. 1985). [Filing No. 85, at ECF p. 2.] In that case, the court did not accept as adequate support for a work product assertion the attorney's unsupported statement in their brief that their client expected litigation every time it entered into the kind of transaction at issue in the case. *U.S. v. 22.80 Acres of Land*, 107 F.R.D. at 22. Plaintiffs' parenthetical reference to this non-binding case from more than 30 years ago is unpersuasive.

[6] Defendants include a footnote that points to the fact that Plaintiffs call CSCS Defendants' "purchasing agent." [Filing No. 79, at ECF p. 4-5 n. 3 (quoting Filing No. 77, at ECF p. 7).] Defendants add that "while Defendants have withheld the documents at issue here based on their common interest with CSCS, the normal attorney-client privilege may also apply based on their agency relationship." [*Id.*] However, Defendants do not develop this argument outside of the footnote and do not rely on it. [*See id.*] Therefore, the Court does not address whether attorney-client privilege applies based on an agency relationship.

attorney-client privilege still protects the communications due to the common interest doctrine. Plaintiffs argue that the common interest doctrine does not apply because Defendants and CSCS were not engaged in a common legal enterprise with an identical legal interest. Plaintiffs contend instead that Defendants and CSCS were engaged in an arm's length transaction and the communications were of a business nature and merely to facilitate that transaction.

"Although occasionally termed a privilege itself, the common interest doctrine is really an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). The common interest doctrine extends to the full range of protected attorney-client communications in order to encourage open communication between parties with a shared legal interest so they can "meet legal requirements and . . . plan their conduct." *Id.* at 816 (quoting *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996)). In doing so, the Seventh Circuit expressly rejected the proposed requirement that the communication be made in anticipation of litigation, which would have restricted protections for joint ventures. *Id.*

The common interest doctrine applies "where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *Id.* at 815-16. In addition to furthering an ongoing enterprise, the parties must "have an identical—not merely similar—legal interest in the subject matter of a communication." *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 964 (N.D. Ill. 2010); see *Heckler and Koch, Inc. v. German Sport Guns GmbH*, 1:11-CV-1108-SEB-TAB, 2012 WL 13029391, at *5 (S.D. Ind. Dec. 28, 2012) (collecting cases), *clarified on denial of reconsideration*, 1:11-CV-1108-SEB-TAB, 2013 WL 2406262 (S.D. Ind. May 31, 2013).

Further, entities may share an identical legal interest in defending against liability arising from a contractual relationship even if their interests in a particular suit as a whole are not identical. *Terra Found. for Am. Art v. Solomol+Bauer+Giambastiani Architects, Inc.*, No. 14 C 3012, 2015 U.S. Dist. LEXIS 56471, at *12 (N.D. Ill. Apr. 29, 2015).

Defendants' privilege log shows DineEquity and CSCS had identical legal interests in the communications at issue, which concerned their negotiation of license and indemnification agreements with Domino. Plaintiffs point to three privilege log descriptions as examples:

> Discussion between DineEquity employees, their agents, and their counsel re: impact of existing supplier services agreement with Domino on sweetener product transition [and] related trademark license agreements between DineEquity and Domino, and Domino indemnification.
>
> Discussion between DineEquity employees, their agents, and their counsel re: negotiation of indemnification in trademark license agreement.
>
> Discussion between DineEquity employees, their agents, and their counsel re: negotiation of trademark license agreement [with respect to] specific marks covered and description of covered products.

[Filing No. 77, at ECF pp. 13-14 (quoting Filing No. 77-1, at ECF pp. 1 (Doc. ID 34), 10 (Doc. ID 789), 11, (Doc. ID 830)).] Given that CSCS is DineEquity's sole authorized purchasing entity, these privilege log descriptions reflect a goal of understanding the legal effects of DineEquity and CSCS's negotiations with Domino with respect to trademark licenses and indemnification agreements.

Plaintiffs argue that the descriptions could imply DineEquity and CSCS did not have identical interests and that any shared interests were business ones, rather than legal. However, Plaintiffs' arguments are largely premised on the unsupported assertion that DineEquity and CSCS were in negotiations with each other, rather than with Domino. Though there is no dearth of cases on this issue from district courts within the Seventh Circuit, Plaintiffs rely on *Bank of America, N.A. v. Terra Nova Ins. Co. Ltd.*, 211 F. Supp. 2d 493, 497 (S.D.N.Y. 2002), which

held that the common interest doctrine did not apply because the shared interest was a business one, rather than legal.[7] Bank of America and Palladium were on opposite sides of a negotiation over letters of credit, but Bank of America argued they shared a common interest in "structuring and effectuating a credit agreement that was appropriately supported by reinsurance policies." *Id.* The court found that this interest was nothing more than "a desire that the transaction be legally appropriate" and to avoid future litigation, which are present in every negotiation. *Id.* "The mere fact that the parties were working together to achieve a commercial goal cannot by itself result in an identity of interest between the parties." *Id.*

However, unlike *Bank of America*, Defendants and CSCS were not on opposite sides of a business transaction, sharing only a goal that the transaction be "legally appropriate." As noted above, DineEquity and CSCS were together in negotiations with Domino, and as described, sought and received legal advice about the legal ramifications of aspects of that deal. Plaintiffs contend that these descriptions show Defendants and CSCS were working to "effectuate their business goal of completing the sweetener transition." [Filing No. 77, at ECF p. 13.] While these descriptions suggest that Defendants' and CSCS's ultimate goal was a business transition, they also make clear that the issues addressed in the communications were specific legal issues within the transition. These legal issues do not lose their legal characteristics merely because they arise in the context of a business transaction.

Plaintiffs offer hypothetical communications they allege would fit within the descriptions Defendants provide in their privilege log, but would indicate divergent business interests:

---

[7] Seventh Circuit district courts have similarly emphasized this distinction between legal and business interests. *See*, *e.g. Dexia Credit Loc. v. Rogan*, 231 F.R.D. 287, 293 (N.D. Ill. 2005); *Terra Found. for Am. Art v. Solomol+Bauer+Giambastiani Architects, Inc.*, No. 14 C 3012, 2015 U.S. Dist. LEXIS 56471, at *12 (N.D. Ill. Apr. 29, 2015).

13

> (1) whether or not Plaintiffs have protectable rights in the color yellow used in connection with sweeteners in the foodservice context; (2) whether CSCS was willing to participate in the sweetener transition as a result of those rights; (3) whether Defendants would indemnify CSCS in the event it was sued for infringing Plaintiffs' property rights; and/or (4) whether CSCS would be satisfied with the compromise that Defendants would include CSCS in their indemnification agreement with Domino.

[Filing No. 77, at ECF p. 14.] The first hypothetical is plainly legal advice. And as Defendants point out, hypotheticals three and four assume DineEquity was negotiating with CSCS instead of them together negotiating with Domino, which makes these hypotheticals implausible. The second hypothetical asks the Court to draw a line in the gray area between legal advice and the effect of that legal advice as applied. Essentially, Plaintiffs asks the Court to draw a line between "Could I be liable for this?" and "Does that mean I have to stop doing this?". The Court declines to draw the distinction presented by this contrived hypothetical to resolve this discovery dispute.

### c. Work Product

Defendants fail to establish work product privilege with respect to Doc. ID 522, which is one of the nine emails where the attorney is listed in the CC column. Defendants argue the document relates to indemnification obligations in a license agreement between Defendants and Domino. Defendants contend that inclusion of the indemnification provisions indicates they anticipated litigation regarding trademark issues. In *Binks Mfg. Co. v. Natl. Presto Industries, Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983), the Seventh Circuit examined the events that led up to the creation of the document in order to determine whether it was created "because of the prospect of litigation, or, that some articulable claim, *likely* to lead to litigation, had arisen." (Emphasis in original) (internal quotation marks and citations omitted). Defendants' and Domino's inclusion of indemnity obligations shows they anticipated the "remote prospect of

14

litigation," but it falls significantly short of showing they were preparing for likely litigation over some articulable claim. Thus, as previously set forth, this document must by presented for *in camera* review.

IV. **Conclusion**

For the reasons above, the Court denies Plaintiffs' motion [Filing No. 76] in part, but withholds its decision with respect to the nine communications in which Defendants' attorneys were only listed in the CC line.[8] Defendants have seven days from the issuance of this order to file the emails under seal for *in camera* review.

Date: 7/25/2018

*[signature]*

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.

---

[8] [Filing No. 77-1 (Doc. IDs. 552, 693, 780, 789, 830, 1011, 1035, 1088, and 1110).]